William J. **ELLIOTT**, Plaintiff–Appellee,

v.

William **THOMAS**, et al.,
Defendants–Appellants.

Barbara **PROPST**, Plaintiff–Appellee,

v.

Morton W. **WEIR**, et al.,
Defendants–Appellants.

Nos. 90–1168, 90–2093 and 90–2146.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1991.

Decided July 15, 1991.

Rehearing and Rehearing En Banc Denied
in Nos. 90–1168 and 90–2093
Sept. 4, 1991.

Daniel Kelly, Walter C. Carlson, Sidley & Austin, Chicago, Ill., for William J. Elliott.

Judson H. Miner, Sharon M. Sullivan, Asst. Corporate Counsel, Kelly R. Welsh, Asst. Corporate Counsel, Bertina Lampkin, Ruth M. Moscovitch, Asst. Corporate Counsel, Appeals Div., Frederick S. Rhine, Asst. Corporate Counsel, Chicago, Ill., for William Thomas, Richard Cap, Robert J. Baker and Virgil Mikus.

Robert Kirchner, Lerner & Kirchner, Champaign, Ill., for Barbara Propst.

John W. Leskera, Dunham, Boman & Leskera, East St. Louis, Ill., for Donald L. Bitzer.

Arnold F. Blockman, Jerome P. Lyke, Hatch, Blockman, McPheters, Fehrenbacher & Lyke, Champaign, Ill., James C. Kearns, Bradford J. Peterson, Heyl, Royster, Voelker & Allen, Urbana, Ill., for Morton W. Weir, Judith S. Liebman and Robert M. Berdahl.

Michael M. Conway, Julie L. Gage, Hopkins & Sutter, Chicago, Ill., for Robert M. Berdahl.

Before EASTERBROOK and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

These cases present a common question of appellate jurisdiction: whether a court's refusal to grant summary judgment to a defendant who denies committing any wrong may be appealed immediately as a "collateral order" on the authority of *Mitchell v. Forsyth*, 472 U.S. 511, 524–29, 105 S.Ct. 2806, 2814–17, 86 L.Ed.2d 411 (1985). To state this question is to answer it. A defense of no wrongdoing is not collateral to the merits; it is the nub of the case. Accordingly, we dismiss two of the appeals. A third is within our jurisdiction, and we conclude that the defendants are entitled to qualified immunity as a matter of law.

William Elliott filed suit under 42 U.S.C. § 1983 contending that the police beat him when they took him into custody. Elliott contends that the beating perforated his eardrum (leaving him with a partial loss of hearing) and broke several teeth. The defendants moved for summary judgment, submitting affidavits and medical records that, they contend, show that Elliott's injuries (if any) predated the arrest, and that he suffered no new hurt at their hands.

The district court concluded that there is a genuine dispute about what happened to Elliott when he was arrested, and it set the case for trial. 1990 U.S.Dist. Lexis 711 (N.D.Ill.), 1990 WL 7125 (N.D.Ill.1990). The defendants have appealed.

Barbara Propst, formerly the Assistant Director of the Computer-based Education and Research Laboratory at the University of Illinois, sued under § 1983 contending that her transfer to Assistant Dean in the College of Applied Life Sciences penalized her for speech that she believes protected by the first amendment. Propst reported to administrators of the University that Donald L. Bitzer, then Director of the Laboratory, had a conflict of interest because he was acquiring goods and services for the Laboratory through corporations in which he had an ownership interest. The University commissioned an audit, which interfered with normal activities of the Lab. The three officials responsible for Propst's transfer—Chancellor Morton W. Weir and Vice–Chancellors Judith S. Liebman and Robert M. Berdahl—contend that they acted to promote efficient operation in the Lab, impossible with the Director and his two chief aides (Barbara Propst and her husband Franklin, then Associate Director of the Lab) at each other's throats. Bitzer contends that he had nothing to do with the transfer—that he did not know of the Propsts' complaints, did not know why the University was running a detailed audit, and never asked higher-ups to do anything about the Propsts. The district court denied the defendants' motions for summary judgment, and all four have appealed.

## I

■ The defense of qualified immunity articulated in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and amplified in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), gives public officials the benefit of legal doubts. An official who does not violate law "clearly established" at the time, 457 U.S. at 818, 102 S.Ct. at 2738, is entitled not only to prevail, but to prevail before trial. Qualified immunity, we know from *Mitchell*, establishes a

right not to be tried. When rules of law clearly establish public officials' duty, the immunity defense is unavailable. So, too, the interlocutory appeal to vindicate the right not to be tried is unavailable when there is no legal uncertainty; there is no separate "right not to be tried" on the question whether the defendants did the deeds alleged; that is *precisely* the question for trial.

■ By sleight of hand you can turn any defense on the merits into a defense of qualified immunity. Consider this possibility for the police officers Elliott has sued: It was not "clearly established" in May 1986, when we arrested Elliott, that police officers could be liable for taking peaceable custody of a suspect; the district court proposes to hold a trial at which the only outcome favorable to plaintiff (given the uncontroverted evidence that Elliott suffered no injury) would be a holding that police *are* liable for making arrests that cause no injury; that would be a change of law, which we cannot be expected to forecast; therefore we are entitled to qualified immunity. The parenthetical expression carries the entire weight of this "argument": if you allow the possibility that the suspect will show injury at trial, then the defendants may be held liable under the law as it existed in 1986. So the claim to immediate appellate review collapses to the argument that the "right not to be tried" can be vindicated only if the court of appeals combs through the factual record. Yet that is miles away from the position of *Harlow, Mitchell,* and *Anderson,* which describe qualified immunity as a defense contingent on the state of the law.

To say that the question on appeal under *Mitchell* is the state of the law when the defendants acted is not to say that current law is irrelevant. *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), holds that a court of appeals may, sometimes must, answer the question whether it was clearly established on a given date that particular conduct violates the Constitution by replying: "Why, that is not established even today; if defendants did everything the plaintiffs alleged, still

they did not violate the Constitution." Deciding just *when* it became "clearly established" that public officials could not do something that the Constitution allows them to do is silly. Our defendants do not say, however, that the Constitution today allows police to beat suspects, or allows university administrators to discriminate against business officials on account of speech.

Facts too play a role in *Mitchell* appeals. It is impossible to know which "clearly established" rules of law to consult unless you know what is going on. *Auriemma v. Rice*, 910 F.2d 1449, 1455 (7th Cir.1990) (in banc). *Bonitz v. Fair*, 804 F.2d 164 (1st Cir.1986), went overboard in holding that the court of appeals must look exclusively to the allegations of the complaint, so that it will not be tainted by the facts in assessing "clearly established" law. *Unwin v. Campbell*, 863 F.2d 124, 130–33 (1st Cir. 1988), overrules *Bonitz* and holds that the court of appeals may consult the full record—viewed, as Fed.R.Civ.P. 56 requires, in the light most favorable to the party opposing the motion for summary judgment. *Green v. Carlson*, 826 F.2d 647 (7th Cir.1987), puts us on the side of *Unwin*, as is every other court of appeals. The fifth circuit flirted with *Bonitz* in *Jefferson v. Ysleta Independent School District*, 817 F.2d 303, 305 (5th Cir.1987), but retreated in *Geter v. Fortenberry*, 849 F.2d 1550, 1559–60 (5th Cir.1988). For a smattering of other cases see *Brown v. Grabowski*, 922 F.2d 1097, 1110–11 (3d Cir. 1990); *Turner v. Dammon*, 848 F.2d 440, 444 (4th Cir.1988); *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir.1988); *DeVargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 719 (10th Cir.1988).

Yet the *reason* a court of appeals examines the facts is to determine whether it was "clearly established" at the time that such deeds were forbidden. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039. It would extend *Mitchell* well beyond its rationale to accept an appeal containing nothing but a factual issue. We have expressed concern that being too ready to entertain interlocutory appeals on immunity grounds would increase the expense plaintiffs must bear, and the delay they must endure, to vindicate their rights. *Abel v. Miller*, 904 F.2d 394, 396 (7th Cir.1990); *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir.1989). If a general defense on the merits supports interlocutory appeal, then every public defendant is entitled to pretrial appellate decision. *Mitchell* did not create a general exception to the finality doctrine for public employees. Every court that has addressed the question expressly has held that *Mitchell* does not authorize an appeal to argue "we didn't do it". *Kaminsky v. Rosenblum*, 929 F.2d 922 (2d Cir.1991); *Ryan v. Burlington County*, 860 F.2d 1199, 1203 & n. 8 (3d Cir.1988); *Lion Boulos v. Wilson*, 834 F.2d 504, 509 (5th Cir. 1987); *Velasquez v. Senko*, 813 F.2d 1509, 1511 (9th Cir.1987). We join them.

■ Bitzer does not contend that he acted in the shadow of legal uncertainty. He submits, rather, that he did not know about and had nothing to do with the events of which Propst complains. His appeal, No. 90–2146, is unrelated to qualified immunity and is dismissed for want of jurisdiction.

■ The four defendants in Elliott's case make at least a stab at presenting a legal issue. *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985), says that excessive force during an arrest violates the due process clause only if acts that shock the conscience produce severe injury. We overruled the subjective approach in *Lester v. Chicago*, 830 F.2d 706 (7th Cir.1987), in favor of the objective reasonableness standard of the fourth amendment. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), holds that *Lester* got it right. *Titran v. Ackman*, 893 F.2d 145 (7th Cir.1990), made it clear that *Graham* also abrogated the significant-injury component of *Gumz*—although not all courts agree with our conclusion. See *Hudson v. McMillian*, —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 645 (1991), granting certiorari to review the significant-injury rule still enforced in the fifth circuit. See *Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989) (in banc). Defendants contend that they were entitled to the benefits of *Gumz*

when they arrested Elliott in 1986. The difficulty is that this legal debate has nothing to do with their defense—that they did not injure Elliott at all. If they punctured Elliott's eardrum without provocation, as Elliott contends, then Elliott recovers under any standard; if the defendants did nothing, as they say, then they prevail under any standard. Legal uncertainty plays no role. Moreover, *Gumz* had limited the circumstances under which persons could recover damages, which is distinct from defining lawful conduct. See *Kurowski v. Krajewski*, 848 F.2d 767, 774–75 (7th Cir. 1988). No reasonable police officer would have thought that *Gumz* condoned cuffing a suspect in the ear (the act Elliott says punctured his eardrum). The only substantial questions are whether the officers did what they are accused of and, if they did, whether these acts injured Elliott. As such questions are outside our jurisdiction, we dismiss appeal No. 90–1168.

## II

The Chancellor and Vice–Chancellors of the University of Illinois knew about the Propsts' complaints. Unlike Bitzer, these three officials present a genuine immunity defense: that the law had not clearly established the impropriety of transferring a public employee whose speech created a disturbance undermining the productivity of other workers. Propst's constitutional claim depends on *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which establishes a balancing approach. Public employers may consider disruptive speech under some circumstances, but not all. Legal ambiguity in the wake of *Pickering* sets the stage for immunity. See *Greenberg v. Kmetko*, 922 F.2d 382 (7th Cir.1991); cf. *Thulen v. Bausman*, 930 F.2d 1209 (7th Cir.1991).

Berdahl contends that he began receiving reports that important members of the staff thought that the work of the Laboratory was in jeopardy and were looking for other employment. Two groups of employees visited Berdahl to voice their concerns about deteriorating relations between Bitzer and the Propsts. Weir received letters reporting that the Lab was in "bad shape". Weir, Berdahl, and Liebman submit that they decided that either Bitzer or the Propsts had to go if the Laboratory was to return to normal. When in the fall of 1987 the auditors submitted a report that the administrators interpreted as absolving Bitzer of any material conflicts, the administrators decided to move the Propsts. They transferred Barbara to an administrative position in the College of Life Sciences, and Franklin returned to the Physics Department, where he was a tenured professor. Neither transfer involved loss of pay or rank within the University. Such transfers, the administrators submit, are justified to deal with a demonstrated disruption in working conditions. E.g., *Breuer v. Hart*, 909 F.2d 1035, 1039–40 (7th Cir.1990); *Knapp v. Whitaker*, 757 F.2d 827, 842–43 (7th Cir.1985). At all events, they submit that this case is sufficiently close to the line that they are entitled to immunity—which "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Barbara Propst does not deny that the three administrators received reports of growing dissention, of diversion of time from the Lab's work, and of plans to leave unless something were done. She maintains, however, that conditions in the Lab were not nearly as bad as the administrators were led to believe (she submits that things were hunky-dory), that any disruption was caused by the audit rather than by conflict among the managers, and that the administrators' true intent was to retaliate on account of her speech rather than to facilitate the educational mission of the Laboratory. She demands additional discovery to pursue these avenues.

When denying the administrators' motion for summary judgment against Franklin Propst, the district court concluded that the cause and extent of breakdown in the Lab's functioning are genuine issues of material fact. The court adopted that reasoning without further elaboration in Barbara Propst's case. Yet the question is not

what the conditions in the Laboratory *were;* it is what the administrators reasonably believed them to have been. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039; *Davis v. Jones,* 936 F.2d 971 (7th Cir.1991). Objectively reasonable but mistaken conclusions do not violate the Constitution. If we assume that the staffers who visited and wrote to the administrators were lying, this does not establish that the administrators' actions were unreasonable, given the information in their possession. Conditions in the Laboratory are not relevant; the inquiry must focus on what the defendants knew, and whether reasonable persons in their position would have believed their actions proper given the state of the law in 1987.

That conclusion takes us straight to Barbara Propst's second argument, and a conundrum. She wants discovery and a trial to probe the defendants' mental processes: did they really rely on the reports, as they say, or were they out to penalize her speech, as she suspects? Yet *Harlow* eliminated the subjective component from official immunity (formerly "good faith immunity", a telling phrase) because searching for intent and other components of knowledge blocks the use of immunity as a shortcut to decision. 457 U.S. at 814–19, 102 S.Ct. at 2736–38; *Cleavinger v. Saxner,* 474 U.S. 193, 208, 106 S.Ct. 496, 504, 88 L.Ed.2d 507 (1985). Official immunity creates a "right not to be tried"; yet if by arguing that the defendants acted with forbidden intent the plaintiff may obtain exhausting discovery and trial, the promise of a "right not to be tried" is a hoax. Carrying out the program of *Harlow* seems to imply attributing to the defendants the best intent they (objectively) could have under the circumstances, and asking whether the law at the time clearly establishes that persons with such an intent violate the Constitution. Yet that would be the functional equivalent of eliminating all recoveries when a mental state is part of the definition of the wrong—as it is in cases of racial discrimination, excessive punishment, and many other constitutional torts. E.g., *Wilson v. Seiter,* —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)

(cruel and unusual punishments clause); *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (due process clause); *Washington v. Davis,* 426 U.S. 229, 238–48, 96 S.Ct. 2040, 2046–51, 48 L.Ed.2d 597 (1976) (equal protection clause). How is it possible simultaneously to preserve remedies for egregious wrongdoing and nip in the bud efforts to prolong the agony of defendants who are fated to win under *Harlow?*

*Auriemma* gives part of the answer. We rejected the invitation to impute to official actors the best motives they could have. *Auriemma* adopts the approach of *Wade v. Hegner,* 804 F.2d 67, 69–70 (7th Cir.1986), which distinguishes the role of intent in defining the violation from the role of intent in ascertaining whether particular conduct was clearly unlawful at the time. 910 F.2d at 1452–53. When intent is one of the substantive elements of a constitutional wrong, the plaintiff is entitled to an adequate opportunity to establish that the defendant acted with the proscribed intent. Whether the defendant knew of and defied the governing legal standards— that is, whether the defendant exhibited "good faith"—is irrelevant under *Harlow.* See also *Rakovich v. Wade,* 850 F.2d 1180, 1210 (7th Cir.1988) (in banc). Other courts of appeals follow the same approach. E.g., *Hobson v. Wilson,* 737 F.2d 1, 29–30 (D.C. Cir.1984).

What *Auriemma* and like cases leave unanswered is the question how it is then possible to comply with *Harlow's* directive that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." 457 U.S. at 818, 102 S.Ct. at 2738. The Supreme Court granted certiorari in *Siegert v. Gilley* to address that question but ducked, concluding that the plaintiff had not stated a claim on which relief may be granted. Although the Court avoided decision for the moment, we can not. Like Justice Kennedy, see *Siegert,* 111 S.Ct. at 1795 (concurring opinion), we think that the best solution to the conundrum is to require the plaintiff to produce "specific, nonconclusory factual allegations which establish [the necessary mental

state], or face dismissal." Unless the plaintiff has the kernel of a case in hand, the defendant wins on immunity grounds in advance of discovery. A series of cases adopt and elaborate on this approach. *Siegert v. Gilley*, 895 F.2d 797, 800–02 (D.C. Cir.1990); *Martin v. D.C. Metropolitan Police Department*, 812 F.2d 1425, 1435–36 (D.C.Cir.1987); *Halperin v. Kissinger*, 807 F.2d 180, 186–87 (D.C.Cir.1986) (Scalia, J.); *Hobson*, 737 F.2d at 29–31; *Collinson v. Gott*, 895 F.2d 994, 1001–03 (4th Cir.1990) (Phillips, J.), and 1011–12 (Butzner, J.); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985); *Myers v. Morris*, 810 F.2d 1437, 1453–54 (8th Cir.1987); *Sawyer v. County of Creek*, 908 F.2d 663, 665–68 (10th Cir. 1990); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 647–50 (10th Cir.1988). We do not rehash the arguments, but two subjects call for brief discussion. One is straightforward. Although the court of appeals' opinion in *Siegert* insisted, 895 F.2d at 803–04, that the plaintiff produce "direct" evidence of the defendant's improper intent, we agree with Justice Kennedy that there is no principled difference between direct and circumstantial evidence. See *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). Requiring "direct" evidence of intent would be fatal in all but the rare case in which the defendant confessed. The other subject is a bit more complex.

Judge Higginbotham, concurring in *Elliott*, 751 F.2d at 1482–83, expressed concern that what *Hobson* dubbed a "heightened pleading requirement" is inconsistent with the Rules of Civil Procedure. Rule 8 establishes a system of notice rather than fact pleading; Rule 9(b) says that motive and intent may be pleaded generally; Rule 56 requires a court acting on a motion for summary judgment to draw all reasonable inferences favorable to the party opposing the motion. A "heightened pleading requirement" in constitutional cases appears to conflict with all three rules. The Acting Solicitor General's brief in *Siegert* dealt with this by arguing that to the extent the rules hinder the immunity defense, they abridge a substantive right and so exceed the scope of the Rules Enabling Act, 28 U.S.C. § 2072(b). Brief for the Respondent at 25. Yet it is hard to depict a "right not to be tried" as substantive; it sounds distinctly procedural. The substantive right belongs to the plaintiff. It is better, we think, to recognize that official immunity is an affirmative defense, which need be asserted only after a plaintiff gets past the (slight) hurdles established by Rules 8 and 9(b). A possibility that the defendants will claim immunity does not require the plaintiff to anticipate and plead around that defense. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Defendants assert immunity by pleading it in the answer and moving for summary judgment.

Because *Gomez* holds that the complaint need not anticipate an immunity defense, it is misleading to speak of a "heightened *pleading* requirement". Nothing we say here affects what the plaintiff must put in the complaint. Only Rule 56 remains for consideration. Rule 56 does not specify how much discovery should be allowed before the court acts; Rule 56(b) says that a defendant may move for summary judgment "at any time", authorizing motions in advance of discovery. Whether the district judge should allow discovery before acting on the motion depends on the governing law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a rule of law crafted to carry out the promise of *Harlow* requires the plaintiff to produce some evidence, and the plaintiff fails to do so, then Rule 56(c) allows the court to grant the motion for summary judgment without ado. Cases such as *Hobson* therefore do not conflict with the rules—and to make this clear we deprecate the expression "heightened pleading requirement" and speak instead of the minimum quantum of proof required to defeat the initial motion for summary judgment.

█ In *Auriemma* the defendant gave plaintiff all the ammunition necessary to avoid summary judgment. After demoting

many white police officers and promoting black officers over them, the chief of police denied having an affirmative action plan—which supported an inference that the chief had an improper intent and was not confused by the perplexing state of the law concerning affirmative action. The top administrators of the University of Illinois have not handed Propst her case on a platter. They contend that they acted solely to promote the efficient operation of an important part of their university. Barbara Propst offers no reason other than her own suspicions to doubt the administrators' account of their reasons. Her husband's parallel case has produced substantial discovery; she does not argue that any of the discovery in that case undercuts the administrators' explanation. Barbara Propst has not produced "specific, nonconclusory factual allegations", *Siegert,* 111 S.Ct. at 1795 (Kennedy, J., concurring), that the administrative defendants sought to punish her on account of speech and disregarded other considerations. The state of the law on mixed-motive transfers was in 1987—and remains—sufficiently ambiguous that the three administrators are entitled to immunity. See *Rakovich,* 850 F.2d at 1213.

Appeals No. 90–1168 and 90–2146 are dismissed for want of jurisdiction. On the administrators' appeal, No. 90–2093, the judgment is reversed.