**Evelyn BLUE, d/b/a, New Paltz Nursing Home, Plaintiff,**

v.

**Mary Jane KOREN, MD, K. Michele Dulemba, Patricia Cooney, RN, Barbara E. Brooks, RN, Barbara Rosenfield, and Nicholas Lawrynenko, Defendants.**

No. 92 Civ. 6700 (GLG).

United States District Court, S.D. New York.

Oct. 13, 1994.

Proskauer Rose Goetz & Mendelsohn, Washington, DC (Bradley L. Kelly, of counsel), for plaintiff.

G. Oliver Koppell, Atty. Gen. of the State of N.Y., New York City (Susan L. Watson, Asst. Atty. Gen., of counsel), for defendants.

## OPINION

GOETTEL, District Judge:

Evelyn Blue, d/b/a, New Paltz Nursing Home ("Plaintiff"), brings this action for declaratory and injunctive relief and damages caused by alleged violations of her rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Defendants, six current and former employees of the New York State Department of Health ("Defendants"), now move for summary judgment on grounds of qualified immunity and failure to state a claim on which relief can be granted.

## BACKGROUND

Plaintiff owns and operates a seventy-nine bed nursing home in New Paltz, New York. Operated by Plaintiff and her family since it opened in 1955, the nursing home houses elderly people who are too ill or infirm to care for themselves. The nursing home is a participant in federal Medicare and Medicaid programs, and care for an unspecified portion of its resident population is funded under those programs.

Participation in Medicare and Medicaid is conditioned on compliance with comprehensive regulations designed to protect residents from mistreatment. The federal Health Care Financing Administration ("HCFA"), a subdivision of the Department of Health and Human Services ("HHS"), administers these two programs. In New York, the HCFA has contracted with the New York State Department of Health ("NYSDOH") to monitor compliance with the federal Medicare and Medicaid regulations. Under this agreement, NYSDOH conducts periodic surveys or inspections of regulated facilities and investigates complaints and allegations of neglect and abuse.

NYSDOH's mandated periodic surveys are at the heart of this dispute. The surveys are conducted in accordance with federal law, which requires that each nursing home be subject to an unannounced "standard survey" at least once every fifteen months. 42 U.S.C. § 1395i–3(g)(2)(A). If a standard survey reveals substandard quality of care the facility must undergo an "extended survey." *Id.*

§ 1395i–3(g)(2)(B). In addition, "[a]ny other facility may, at the Secretary's or State's discretion, be subject to such an extended survey (or a partial extended survey)." *Id.*

Both standard and extended surveys must be conducted in accordance with protocols established by HHS. *Id.* § 1395i–3(g)(2)(C). The HHS Survey Protocol for Long Term Care Facilities (the "Survey Protocol") breaks up the standard survey into seven distinct tasks and establishes guidelines for the overall performance of the survey. The Survey Protocol also sets some minimum requirements for conduct of the survey, such as minimum resident sample sizes.

Two rounds of NYSDOH surveys and an administrative enforcement proceeding provide the factual underpinning for Plaintiff's claims. In August 1990, NYSDOH conducted a survey of the New Paltz Nursing Home. According to Plaintiff, this 1990 survey resulted in only one "minor" citation and Plaintiff has no complaints about NYSDOH's conduct. In October 1990, the Commissioner of NYSDOH upheld a tube-feeding method used by the nursing home after a long, hard-fought administrative enforcement proceeding that had begun well before the 1990 survey.

The second relevant round of surveys began on September 3, 1991 with a standard survey and included three follow-up surveys. Plaintiff argues that in these surveys Defendants subjected the nursing home to unacceptably intense scrutiny and failed to follow mandated survey procedures in retaliation for the nursing home's successful defense in the tube-feeding challenge. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, seeking a judgment declaring that Defendants violated Plaintiff's due process rights and right against unreasonable searches and seizures, an injunction against any further such violations, compensatory and punitive damages, and costs and attorney's fees.

## DISCUSSION

Section 1983 provides that any person who, acting under color of state law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured. . . ." 42 U.S.C. § 1983. Plaintiff presents four theories of constitutional violation in support of her claim: (1) retaliatory action against the exercise of her right to petition for the redress of grievances, (2) denial of procedural due process, (3) denial of substantive due process, and (4) unreasonable search in violation of the Fourth Amendment. Defendants move for summary judgment, arguing that there has been no constitutional violation to support a claim under section 1983 and that they are entitled to qualified immunity.

To prevail on this motion, Defendants must demonstrate "that there is no genuine issue as to any material fact and that [they are] entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making that determination, this Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Summary judgment is only warranted when no reasonable trier of fact could find for the non-moving party. *Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,* 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

### 1. *Qualified Immunity*

The defense of qualified immunity must be addressed first, because if Defendants are immune we do not need to assess Plaintiff's substantive claims. The Supreme Court has recognized that "resolution of immunity questions inherently requires a balance between the evils inevitable in any available alternative." *Harlow v. Fitzgerald,* 457 U.S. 800, 813–14, 102 S.Ct. 2727, 2735–36, 73 L.Ed.2d 396 (1982). The Court has frequently noted that while an action for damages is often the only available relief, there is a serious "danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.' " *Id.* at 814, 102 S.Ct. at 2736 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)). To this end, the Court has sought to establish a qualified immunity standard that allows insubstantial

claims to be terminated on a motion for summary judgment prior to trial or even discovery.

■ Under the standard announced in *Harlow,* a government official performing a discretionary function cannot be held personally liable to the extent his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. This is an objective test, focusing on the determination of whether the right in question was clearly established at the time the action occurred. *Id.*

### A. *Procedural Due Process*

Plaintiff argues that her procedural due process rights were violated because Defendants cited the home for violations based on use of the same tube-feeding method that was previously upheld by the Commissioner of NYSDOH. Such "duplicative prosecution" actions have been recognized as proper procedural due process claims. *Continental Can Co. v. Marshall,* 603 F.2d 590 (7th Cir. 1989); *see also United States v. American Honda Motor Co.,* 273 F.Supp. 810 (N.D.Ill. 1967). "The Supreme Court has long recognized that 'the cruelty of harassment by multiple prosecutions' can violate the Due Process clause." *PHE, Inc. v. United States Dep't of Justice,* 743 F.Supp. 15, 24 (D.D.C. 1990) (quoting *Bartkus v. Illinois,* 359 U.S. 121, 127, 79 S.Ct. 676, 680, 3 L.Ed.2d 684 (1959)). Thus, Plaintiff's due process right to be free of duplicative government enforcement action was clearly established at the time Defendants allegedly undertook such conduct.

### B. *Substantive Due Process*

■ Plaintiff also alleges that her substantive due process rights were violated because Defendants' actions were allegedly "used for purposes of oppression", *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), and their behavior "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). However, the cases cited by Plaintiff in support of this claim involved simple, clear deprivations of liberty

such as incarceration. Given the complexities and subtleties of substantive due process jurisprudence, we cannot find that Defendant's alleged conduct violated clearly established substantive due process law, if such a thing exists. Defendants are immune from liability on Plaintiff's substantive due process claim.

### C. *Fourth Amendment*

■ Plaintiff's Fourth Amendment claim alleges that Defendants conducted unreasonable administrative searches of the nursing home. Warrantless administrative searches of highly regulated industries are proper where (1) there is a "substantial" government interest underlying the regulatory scheme, (2) the search is "necessary to further [the] regulatory scheme," and (3) the inspection program constitutes an adequate substitute for a warrant in terms of certainty and regularity of application. *New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987) (quoting *Donovan v. Dewey*, 452 U.S. 594, 600, 101 S.Ct. 2534, 2539, 69 L.Ed.2d 262 (1981)). Plaintiff does not contest the adequacy of the regulatory substitute for a warrant, rather she argues that the 1991 round of surveys was unreasonable in both its inception and its scope.

Despite Plaintiff's attempts to bootstrap Defendants' intent into this analysis, this is a purely objective determination. Here, Defendants are entitled to qualified immunity if it was objectively reasonable for them to believe that their actions did not exceed the scope of the established regulatory scheme. *See Vasquez v. Coughlin*, 726 F.Supp. 466, 471 (S.D.N.Y.1989) (citing *Krause v. Bennett*, 887 F.2d 362, 368 (2d Cir.1989)). We cannot answer this question on the current record because there are unresolved issues of fact with regard to the scope, and therefore reasonableness, of Defendants' actions in conducting the surveys. *See Langley v. Coughlin*, 888 F.2d 252 (2d Cir.1989).

### D. *Retaliatory Action*

■ Analysis of the qualified immunity defense is more difficult with respect to Plaintiff's retaliation claim. The objective analysis applied above is complicated when the "clearly established law" underlying the alleged constitutional violations includes a subjective element of intent. Despite the strong language in *Harlow* stressing the need for an objective standard for qualified immunity, most courts have determined that *Harlow* does not require the court "to ignore the fact that intent is an element of the relevant cause of action." *Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir.1988). However, there has been substantial confusion regarding the appropriate standard for qualified immunity in such cases.

In an attempt to satisfy the policy considerations that drove the Supreme Court in *Harlow*, several circuits have adopted heightened pleading or evidentiary standards that a plaintiff must meet to overcome an assertion of qualified immunity in a retaliation case. For example, the District of Columbia Circuit has held that if a defendant moves for summary judgment on a retaliation claim based on the objective reasonableness of his actions, the plaintiff must come forward with "something more than inferential or circumstantial support for his allegation of unconstitutional motive." *Martin v. D.C. Metro. Police Dep't*, 812 F.2d 1425, 1435 (D.C.Cir. 1987). Thus, the D.C. Circuit requires plaintiff to come forward with direct evidence of the defendant's motivation in order to survive summary judgment.

Other circuits have sought to establish a heightened standard that is less demanding than that adopted by the D.C. Circuit. *See Branch v. Tunnell*, 937 F.2d 1382 (9th Cir. 1991); *Elliott v. Thomas*, 937 F.2d 338 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1242, 117 L.Ed.2d 475 (1992); *Crutcher v. Kentucky*, 883 F.2d 502 (6th Cir.1989). This general approach has also been endorsed by four Supreme Court justices in *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S.Ct. 1789, 1795, 114 L.Ed.2d 277 (1991) (Kennedy, J. concurring in the judgment); *id.* at 246, 111 S.Ct. at 1800–01 (Marshall, Blackmun, and Stevens, JJ., dissenting in part). While the majority avoided this issue entirely, the remaining four justices explicitly rejected the District of Columbia Circuit's direct evidence requirement. *Id.* Justice Kennedy went on to endorse a test where "[u]pon the assertion

of a qualified immunity defense the plaintiff must put forward specific, nonconclusory factual allegations which establish malice, or face dismissal." *Id.* at 236, 111 S.Ct. at 1795.

The Second Circuit has not clearly adopted either approach. In *Musso v. Hourigan*, 836 F.2d 736 (2d Cir.1988), the court affirmed a denial of summary judgment on a retaliation claim based on qualified immunity, but did not address the plaintiff's burden directly. Apparently applying the traditional summary judgment standard, the court first found that there was an issue of fact regarding the defendant's motivation. The court then concluded that *if* the defendant had an improper motive his "conduct unambiguously violated clearly established first amendment law." *Id.* at 743. Thus the question of fact regarding the defendant's motivation precluded summary judgment, and there was no explicit application of a heightened standard. The court did not delve deeply into the objective reasonableness of the defendant's conduct.

Two subsequent cases, however, focused on the objective reasonableness of the defendant's conduct and are difficult to analyze clearly in relation to *Musso*. In both *Magnotti v. Kuntz*, 918 F.2d 364 (2d Cir.1990), and *Mozzochi v. Borden*, 959 F.2d 1174 (2d Cir.1992), the defendants raised the defense of qualified immunity against plaintiffs' claims that they were arrested in retaliation for exercising their constitutional rights. In each case the court of appeals reversed the district court's denial of summary judgment for the defendant.

Close examination reveals that these two cases were actually decided on the underlying constitutional claims rather than on qualified immunity. In *Magnotti*, the court did not confine itself to an inquiry into the objective reasonableness of the defendant's actions. They clearly assessed the relative weight of the plaintiff's evidence of retaliatory motive, finding it woefully inadequate. Thus, the court seemed to assess the underlying retaliation claim under the traditional summary judgment standard rather than the qualified immunity standard.

The analysis in *Mozzochi* focused even more clearly on the underlying constitutional claim. Although the court of appeals dis-

cussed the issue as a qualified immunity analysis, it ultimately found that there was no constitutional violation because the arrest did not deter the plaintiff from exercising his rights under the First, Fifth and Fourteenth Amendments. *Mozzochi*, 959 F.2d at 1181.

These three cases are not clearly instructive on the qualified immunity standard to be applied in a retaliation case. The language of *Musso*, however, comports with other courts holding that *Harlow* has not totally eliminated analysis of a defendant's motivation in retaliation cases. In such cases, the most appropriate balance is achieved under the test described by Justice Kennedy in *Siegert*. A heightened evidentiary standard most effectively protects government officials from insubstantial claims without completely eliminating retaliation claims. We hold that to overcome Defendant's qualified immunity defense, Plaintiff must put forward specific, non-conclusory factual allegations that establish retaliatory intent.

Defendants urge us to adopt the more "demanding standard" applied by the D.C. Circuit. We decline. Nothing indicates that the Second Circuit has adopted this direct evidence requirement. Further, requiring direct evidence of motive to survive a defense of qualified immunity forces plaintiffs to satisfy a more difficult standard than they must meet at trial. Since circumstantial evidence can be equally probative as direct evidence, this rule would screen out claims based on an evidentiary requirement that does not accurately reflect the plaintiff's ability to prove motivation. *See Kimberlin v. Quinlan*, 17 F.3d 1525, 1528–29 (D.C.Cir.1994) (Edwards, J., dissenting from denial of rehearing *en banc*).

Here, intent is the key element of Plaintiff's claims. Under clearly established law as of September 1991, survey and enforcement actions taken in retaliation for the exercise of the right to petition the government constituted recognized constitutional violations. *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir.1988). Absent an intent to retaliate, Defendants have not violated Plaintiff's con-

stitutional rights. We find that *if* Defendants subjected Plaintiff to intensified scrutiny in retaliation for her exercise of the right to petition the government, such conduct unambiguously violated clearly established constitutional law. *See Musso*, 836 F.2d at 743.

Defendants have presented a prima facie case that their actions were objectively reasonable because they generally comported with regulatory requirements and there was sufficient evidence of at least some regulatory violations. Plaintiff, however, has countered with specific, non-conclusory circumstantial evidence of retaliation sufficient to overcome the heightened evidentiary standard for qualified immunity.

Defendants are immune from liability with respect to Plaintiff's substantive due process claim, but not with respect to Plaintiff's procedural due process, Fourth Amendment and retaliation claims.

### 2. Genuine Issues of Material Fact

#### A. Procedural Due Process

■ Plaintiff argues that her procedural due process rights have been violated because Defendants have cited the home for violations based on use of the same tube-feeding method that was previously upheld by the Commissioner of NYSDOH. Defendants failed to counter this argument directly, relying on the assertion that their actions conformed with the established regulatory scheme.

As noted above, such "duplicative prosecution" actions have been recognized as proper procedural due process claims. *Continental Can Co. v. Marshall*, 603 F.2d 590 (7th Cir. 1979); *see also United States v. American Honda Motor Co.*, 273 F.Supp. 810 (N.D.Ill. 1967). Here, the key issue is whether the violations cited by Defendants were in fact the same as those contested in the 1989 administrative hearing. Plaintiff asserts that several of the violations stemming from the 1991 surveys were issued for practices associated with the tube-feeding method that was upheld by the Commissioner of NYSDOH. Defendants have not countered this assertion, and nothing in the submissions clearly establishes that some of the violations are

not based on the disputed tube-feeding method. Thus, there is a question of material fact that precludes granting summary judgment for Defendants on Plaintiff's procedural due process claim.

#### B. Fourth Amendment

■ Plaintiff claims that Defendants conducted unreasonable administrative searches at the nursing home in violation of her Fourth Amendment rights. Plaintiff asserts that the surveys were unreasonable in both their inception and scope. Defendants counter that the surveys were objectively reasonable and were performed in accordance with state and federal regulations.

While the 1991 round of surveys appears to have been reasonable at its inception since it was mandated by federal statute, *see* 42 U.S.C. § 1395i–3(g)(2)(A), the reasonableness of its scope is not clear. The parties dispute both the degree of scrutiny undertaken by Defendants and the manner in which the surveys were conducted, including contested allegations of harassment and intimidation of residents and staff. Genuine issues of material fact remain regarding the scope of Defendant's actions during the 1991 surveys that preclude granting summary judgment for Defendants on Plaintiff's Fourth Amendment claim.

#### C. Retaliatory Action

■ State action taken in retaliation for the exercise of a constitutionally protected right can form the basis for a Section 1983 claim, even if the action would have been proper in other circumstances. *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir.1988). Here, Plaintiff asserts retaliation for exercise of the right to petition the government, a right that is " 'among the most precious of the liberties safeguarded by the Bill of Rights.' " *Id.* at 589 (quoting *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967)). Since this right is substantive, it "cannot be obstructed, regardless of the procedural means applied." *Morello v. James*, 810 F.2d 344 (2d Cir.1987).

Retaliation claims such as this, however, require the court to strike a difficult balance: protecting against constitutional transgressions without hobbling the government's ability to enforce the law. The Supreme Court sought to achieve this balance in *Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In *Mt. Healthy,* the plaintiff claimed that the defendant's decision not to renew his contract was motivated by his exercise of his First Amendment rights. After a bench trial the district court determined that the plaintiff's constitutionally protected activity had played a "substantial" role in the decision, and found for the plaintiff. *Id.* at 276, 97 S.Ct. at 570.

The Supreme Court recognized that the district court's approach, which focused only on the role the constitutionally protected activity played in the government's decision, "could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Id.* at 285, 97 S.Ct. at 575. The Court was specifically concerned with a situation where "a dramatic and perhaps abrasive incident is inevitably on the minds of those responsible for the decision to rehire, and does indeed play a part in that decision—even if the same decision would have been reached had the incident not occurred." *Id.* In such an instance "[t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Id.* at 285–86, 97 S.Ct. at 575.

■ The Court fashioned a two part rule to address this concern. First, the burden is on the plaintiff to demonstrate that the protected conduct was a "substantial" or "motivating" factor in the decision. Once such a showing is made, the burden shifts to the defendant to prove by a preponderance of the evidence that it would have reached the same decision absent the protected conduct. *Id.* at 287, 97 S.Ct. at 576. The defendant prevails if it carries this burden.

To show that its protected conduct substantially motivated Defendants' actions, Plaintiff must establish a causal connection between the protected activity and Defendants' actions in conducting the survey. *Taitt v. Chemical Bank,* 849 F.2d 775 (2d Cir.1988). For this Plaintiff looks to the timing and scope of the surveys, and the personnel and procedures used by NYSDOH. With no shortage of hyperbole, Plaintiff alleges that NYSDOH has engaged in a campaign of harassment in retaliation for Plaintiff's victory in the prior tube-feeding dispute.

While Plaintiff does not dispute that a standard survey was required in 1991, Plaintiff alleges that NYSDOH came "loaded for bear." Plaintiff complains that the 1991 surveys involved excessive scrutiny, biased surveyors, improper survey tactics, flawed findings, inadequate opportunity to respond and improper enforcement activity. Plaintiff strives to present a picture of government regulators run amok, submitting twenty-five pages chronicling the government's alleged misdeeds.

The vagueness of the relevant regulatory scheme significantly helps Plaintiff in this summary judgment motion. The statutes and regulations generally establish only minimum requirements and provide guidance for implementation: they do not set maximum numbers of surveyors or specifically prohibit Defendants' alleged actions. Taken as a whole, and resolving all ambiguities in favor of Plaintiff, it appears that the 1991 surveys were at least somewhat more intensive than typical surveys. Given the timing of the surveys and the personnel involved, we cannot say that no rational trier of fact could find that the alleged intensity of NYSDOH's surveys was substantially motivated by intent to retaliate for the tube-feeding challenge.

Defendants present evidence that there were at least arguable regulatory violations in support of their position that the same results would have occurred absent Plaintiff's conduct. Further, it is clear that Plaintiff has long had a rocky relationship with the State Department of Health. Exhibits submitted by Defendants demonstrate that the facility has alleged harassment based on negative findings and threatened legal action against state regulators since at least 1972. Ultimately, however, we are left with issues

of material fact regarding the existence of violations cited in support of Defendant's assertion that it would have reached the same decision absent Plaintiff's protected actions.

Although we recognize the burden that this type of claim places on the government, we cannot conclude that no rational trier of fact could find that Defendants' actions were substantially motivated by an interest in retaliation, or that Defendants' actions would not have occurred absent the protected conduct. Defendants' motion for summary judgment on the retaliation claim is denied.

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is granted with respect to Plaintiff's substantive due process claim and denied as to all other claims.

**SO ORDERED.**