**Jacqueline M. VERNEY, Plaintiff,**

v.

**James J. DODARO, Howard Yerusalim, Frank A. Ursomarso, Robert A. Brady, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, James B. Wilson, Joseph L. Di Rienzo, Samuel L. Carnabucci, Melvin M. Shelton, Walter J. Lawson, Louis R. Martin, Kevin F. Longenbach, Defendants.**

**Jacqueline M. VERNEY, Plaintiff,**

v.

**PENNSYLVANIA TURNPIKE COMMISSION,
Defendant.**

**Civ. A. Nos. 1:CV–93–1229, 1:CV–93–1261.**

United States District Court,
M.D. Pennsylvania.

Jan. 5, 1995.

Thomas J. Dempsey, Pittsburgh, PA, for Jacqueline M. Verney.

Gabriel L.I. Bevilacqua, Saul, Ewing, Remick & Saul, Philadelphia, PA, Elizabeth A. Malloy, Thomas S. Giotto, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Stephen M. Donweber, Saul, Ewing, Remick & Saul, Philadelphia, PA, Lawrence C. Norford, Saul, Ewing, Remick & Saul, Harrisburg, PA, for James J. Dodaro, Howard Yerusalim, Robert A. Brady, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Di Rienzo, Samuel L. Carnabucci, Melvin M. Shelton, Walter J. Lawson, Louis R. Martin, Kevin F. Longenbach.

Charles W. Rubendall, II, Keefer, Wood, Allen and Rahal, Harrisburg, PA, Gabriel L.I. Bevilacqua, Saul, Ewing, Remick & Saul, Philadelphia, PA, Donald M. Lewis, III, Keffer, Wood, Allen & Rahal, Harrisburg, PA, Elizabeth A. Malloy, Thomas S. Giotto, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Stephen M. Donweber, Saul, Ewing, Remick & Saul, Philadelphia, PA, Lawrence C. Norford, Saul, Ewing, Remick & Saul, Harrisburg, PA, Dale R. Dube, Charlene D. Davis, Bayard, Handelman & Murdoch, P.A., Wilmington, DE, for Frank A. Ursomarso.

Elizabeth A. Malloy, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Harvey A. Sernovitz, Philadelphia, PA, for James B. Wilson.

Gabriel L.I. Bevilacqua, Saul, Ewing, Remick & Saul, Philadelphia, PA, Elizabeth A.

Malloy, Thomas S. Giotto, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, Lawrence C. Norford, Saul, Ewing, Remick & Saul, Harrisburg, PA, Pennsylvania Turnpike Com'n.

## MEMORANDUM

CALDWELL, District Judge.

Pending in each of the above captioned cases is a motion for summary judgment filed by the Defendants. We will address the motions *seriatim.*

### I. *Facts*

These cases arise from Plaintiff's employment with the Defendant, Pennsylvania Turnpike Commission ("Commission"). In the suit against the Commission (No. 93–1261) and various of its employees (No. 93–1229), Plaintiff alleges that she was not promoted to the position of Deputy Chief Counsel, nor apprised of the opportunity for such promotion, because of her gender. Plaintiff's claim against the Commission is made under Title VII of the Civil Rights Act of 1964 and her claims against the employees are based upon 42 U.S.C. § 1983 and the Fourteenth Amendment.

At all times relevant to this action, Defendants Dodaro, Yerusalim, Ursomarso, Brady, and Malone were "commissioners", who govern all matters involving the Commission. Defendant Sokol was Executive Director of the Commission. Sokol and Defendants Palermo, Wilson, Di Rienzo, Carnabucci, Shelton, and Lawson, were members of the Commission's personnel committee. Defendant Martin is Chief Counsel of the Commission and Defendant Longenbach is Deputy Chief Counsel.[1] These Defendants, other than Longenbach, were involved, in some manner, in the decision not to promote the Plaintiff to Deputy Chief Counsel.

### II. *Law and Discussion*

#### A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'", and summary judgment must be entered in favor of the moving party. *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

#### B. Title VII Action (1:CV–93–1261)

■ There are two theories for establishing employment discrimination under Title VII: disparate treatment and disparate impact. *See Mardell v. Harleysville Life Ins. Co.,* 31 F.3d 1221, 1224 (3d Cir.1994). Plaintiff argues that her complaint contains claims under both theories.

##### 1. Disparate Impact

Plaintiff's assertion that there was an employment practice at the Commission that caused a disparate impact against women is rejected for three reasons. First, it is not a part of this action because she failed to plead it in her complaint. Second, if the claim was properly pled, or we allowed Plaintiff to amend her complaint, she lacks standing to challenge the employment practices of the Commission. Finally, even assuming she has standing, she has failed to demonstrate a prima facie case of disparate impact.

■ In *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632 (3d Cir. 1993), the Third Circuit upheld the district court's decision

---

**1.** Longenbach's promotion to this position is the basis of the Plaintiff's claims.

that Josey could not proceed to trial on a disparate impact claim because his complaint failed to identify the specific employment practice that allegedly caused the disparate impact. *Id.* at 642 (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656–57, 109 S.Ct. 2115, 2124–25, 104 L.Ed.2d 733 (1989)). The Commission contends that the decision in *Josey* mandates that we find that Plaintiff's complaint does not include a claim for disparate impact because it fails to identify the specific employment practice that causes the alleged disparate impact.

Plaintiff argues that the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Unit*, ── U.S. ──, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) casts doubt upon the continued validity of the rule announced in *Josey*. However, the rule in *Josey* does not conflict with *Leatherman* because the Plaintiff is not being held to a heightened pleading standard; rather, she has not identified the factual elements of her cause of action, one of which is the employment policy that caused the disparate impact. This does not impose a standard greater than that provided in Fed.R.Civ.P. 8(a).[2]

■ In the alternative, Plaintiff asserts that since discovery is ongoing, she will move to amend her complaint. Discovery ended on November 1, 1994 and permitting Plaintiff to amend her complaint at this late date would cause the Defendant severe prejudice.[3] *Josey*, 996 F.2d at 642 (plaintiff denied leave to amend his complaint because "amendment of [his] pleadings [to include a disparate impact claim] after the close of discovery would prejudice the defendant"). Plaintiff also alleges that the Commission knew that she was pursuing a disparate impact claim throughout the litigation and would not prejudiced if we permit her to amend her complaint.

However, we cannot credit this surmise, and it is more likely that the Commission conducted its discovery believing that is faced only a disparate treatment claim. Plaintiff's complaint was filed well over a year ago, yet Plaintiff has made no attempt, until now, to amend it. We will not prejudice the Commission because of Plaintiff's pleading error.

■ Finally, Plaintiff argues that her complaint adequately sets forth a claim of disparaté impact. However, the only mention of disparate impact in the complaint is that

[t]he invidious policy and practice of the Commission in not promoting qualified women to senior management and executive positions is of such a broad nature within the Commission as to amount to disparate treatment of women employees by the Commission and such as to have a disparate impact upon them.

[Pl.'s Compl. ¶ 31]. Although far from clear, it appears that Plaintiff is contending that the Commission's alleged policy of intentionally discriminating against women causes a disparate impact on women. That argument is nonsensical. Plaintiff has confused two distinct causes of action. A disparate impact claim arises when a facially neutral employment policy is applied in such a way as to have an adverse impact on a protected class. A disparate treatment claim occurs when there is proof, either direct or circumstantial, that a Defendant harbored a discriminatory animus against an individual Plaintiff. To present a disparate impact claim, a Plaintiff must identify the specific employment policy in his or her complaint that, as applied, results in a disparate impact to a protected class. *See Josey*, 996 F.2d at 642. Plaintiff has not done so, and thus has not set forth a claim for disparate impact.[4]

---

2. We also note that although *Josey* was argued and briefed before the decision in *Leatherman*, the Third Circuit rendered its decision after the Supreme Court decided *Leatherman*. If, as Plaintiff suggests, *Leatherman* created such a sweeping change in the pleading of disparate impact claims, it is reasonable to assume that the Third Circuit might have mentioned its potential effect.

3. The Commission contends that Plaintiff incorrectly asserts that discovery is not complete.

While it admits that it allowed Plaintiff to depose one additional person after the deadline, the Commission correctly notes that in all other respects discovery has been closed as scheduled.

4. In fact, it is still unclear which employment policy Plaintiff alleges causes the discriminatory impact. In her complaint, she states that the Commission's policy of intentionally discriminating against women *who seek to be promoted within the Commission* causes a disparate impact

Even if we were to assume that Plaintiff's complaint asserted a claim of disparate impact, or if we allowed her to amend her complaint, her claim would still fail. Plaintiff argues that the political patronage system causes a disparate impact among women because "it is common knowledge that more men are active in political party activities than women. Thus more men will be employed in patronage jobs." [Pl's.Br. in Opp'n to S.J. at 14]. The Commission argues that Plaintiff lacks standing to challenge its employment policies because she was hired by the Commission and was considered for the position of Deputy Chief Counsel.

Although Plaintiff asserts that she was not "considered" for the position of Deputy Chief Counsel, the testimony of various employees of the Commission indicates otherwise, and Plaintiff has not presented a shred of evidence to the contrary. Martin stated that "[Sokol] and I discussed the two obvious candidates, the most senior people, the people with the most experience and the most qualifications, ... was [Plaintiff] and Kevin [Longenbach]." [L. Martin Dep. at 91]. Sokol testified that "we discussed it and we agreed between us that there were two candidates that we should consider and through discussions we determined that of the two candidates, Kevin Longenbach was more qualified than Jackie Verney." [J. Sokol Dep. at 48]. Lawson explained that at a personnel committee meeting there was a "very heated discussion [on whether Plaintiff or Longenbach should be promoted] and ... in all time I was on the personnel committee, we probably spent the most time on this one situation because there was not a clear-cut agreement...." [W. Lawson Dep. at 48]. Lawson further stated that prior to his vote on the matter, he had contacted another employee of the Commission for background information because he "didn't know the peo-ple involved, either Jackie or Kevin." [W. Lawson Dep. at 45].

This evidence leaves little doubt that both the Plaintiff and Mr. Longenbach were considered for the position. Plaintiff offers no evidence, other than her unsupported declaration, to support her assertion that she was not considered and that the Commission was predisposed to promote Longenbach.[5] Thus, even if she pled a disparate impact claim, she cannot complain about the Commission's promotional policy because she has not suffered any injury through its application. *See Robinson v. Polaroid Corp.*, 732 F.2d 1010, 1016 (1st Cir.1984) (plaintiff in disparate impact claim must have been injured through execution of the policy); *Carpenter v. Board of Regents of the University of Wisconsin*, 728 F.2d 911, 915 (7th Cir.1984); *Harper v. Godfrey, Co.*, 839 F.Supp. 583, 605 (E.D.Wis. 1993); *Rodriguez v. American Telephone & Telegraph Co.*, No. 89–1313, 1992 WL 88074, *7 (D.N.J. April 6, 1992).

Finally, even if the Plaintiff had standing, and did properly plead her claim, she has not set forth sufficient statistical evidence to show that the alleged political patronage system creates a disparate impact among women. The only potentially relevant evidence presented by the Plaintiff is the report of Roland Ramsey, wherein he opined that the hiring and promotion practices of the Commission result in a disparate impact among women. He concluded that the employment practices of the Commission hinder the selection of the best candidates, decrease the reliability of selections, and that "[d]ifferential treatment of Mrs. Verney in the consideration process is strong evidence of a discriminatory selection process." [App. E to Pl.'s Br. in Opp'n to S.J. at 5]. Although the term "disparate impact" does not appear anywhere in his report, Ramsey did note that "[v]arious deponents testified that about 20 to 25 percent of [Commission] employees

among women. As set forth above, this argument confuses two distinct causes of action.

Her brief in opposition to summary judgment is replete with references to political patronage with regard to employment with the Commission. She contends that more men are involved in politics than women, and thus more men are hired. Thus, Plaintiff now appears to argue that the system of political patronage results in a disparate impact to women "not connected to the political process" *who seek employment with the Commission*. [J. Verney Dep. at 38].

5. Although Plaintiff did not submit a resume, receive an interview, or appear before the Committee, she has offered no evidence to indicate that Mr. Longenbach did.

were female ... while one would expect numbers closer to the 40 to 50 percent available in the workforce." [App. E to Pl.'s Br. in Opp'n to S.J. at 4]. These bare conclusions are insufficient to establish a prima facie case of disparate impact. *See Newark Branch, NAACP v. Town of Harrison*, 940 F.2d 792, 798 (3d Cir.1991) (must prove that the challenged practice has an adverse impact on a protected group through statistical analysis). Ramsey did not produce evidence or explain how he arrived at the "40 to 50 percent" availability of women in the workforce. Further, Plaintiff has supplied no firm evidence concerning the number of women employed in the Commission or the percentage of new female employees. Thus, even assuming Plaintiff could proceed on a disparate impact claim, she has failed to establish a prima facie case.

## 2. Disparate Treatment

■ Disparate treatment claims are divided into three sub-groups: pure discrimination, mixed motives, and pretext. In pure discrimination and mixed motives cases, the Plaintiff must produce direct evidence of discrimination by the employer.[6] *Dugan v. Pennsylvania Miller's Mutual Insurance Company*, 871 F.Supp. 785 (M.D.Pa.1994) (Kosik, J.) (citing *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Mardell*, 31 F.3d at 1225 n. 6). Plaintiff does not assert that there is direct evidence of sexual discrimination, and therefore, we will not consider these theories.

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the basic framework and burdens of proof in Title VII pretext actions. First, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. A prima facie case for failure to hire or promote is accomplished "by

showing that [the plaintiff] is a member of a protected class; that [the plaintiff] was qualified for and rejected for the position; and that non-members of the protected class were treated more favorably." *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 522 (3d Cir.1992) (citation omitted), *cert. denied*, ── U.S. ──, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). When the plaintiff succeeds in proving a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). If the defendant carries its "relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* (parenthetical in original). In order to defeat a motion for summary judgment when the defendant has offered legitimate, non-discriminatory reasons for its actions,

the plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Id.* at 764.

■ In the present case, the Commission concedes, for purposes of this motion, that the Plaintiff has proved a prima facie case of discrimination. It asserts that Plaintiff was not promoted because it lacked confidence in her ability to properly represent its interests. As examples, it contends that Plaintiff was unable to deal effectively with outside counsel, that this prejudiced the Commission's interests, and that her conduct, at times, rose to the level of insubordination. These are legitimate, non-discriminatory reasons for its

---

**6.** A pure discrimination case can also be successful in the absence of direct evidence "[i]n the unlikely event that the employer ... remains silent" after the Plaintiff has proved his or her

prima facie case. *Mardell*, 31 F.3d at 1225 n. 6. As set forth below, that did not occur in this action.

decision and the Commission has carried its burden. In response, Plaintiff argues that the proffered reasons are pretextual and that sexual discrimination was more likely than not a factor in the promotion decision.

### a. Were the reasons advanced by the Commission pretextual?

 The reasons advanced by the Commission for not promoting the Plaintiff are based on the recommendation of Louis Martin, Chief Counsel of the Commission. Martin testified that one reason for his lack of confidence in the Plaintiff was that outside counsel for the Commission (Mr. Kamin and Mr. Snyder) complained to him about working with Plaintiff, and that he had to reassign the cases in which these attorneys and Plaintiff were involved to avoid "constant friction". [L. Martin Dep. at 28]. In response, Plaintiff argues that Mr. Kamin's complaint stemmed from a production of documents by Plaintiff that Mr. Kamin, as outside counsel, did not believe should be produced. She contends that she produced documents in a case in order to save the Commission money, and that the court in that case ultimately issued an order compelling the Commission to produce them. However, this evidence could not lead a jury to conclude that Mr. Kamin did not complain to Martin, or that Martin did not rely on that complaint in his decision with respect to Plaintiff's promotion. Rather, it attacks only the circumstances underlying the reason advanced by the Commission, and "[e]vidence contesting the factual underpinnings of the reason for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question." *Hoeppner v. Crotched Mountain Rehabilitation Center, Inc.*, 31 F.3d 9, 17 (1st Cir.1994) (citation omitted) (alterations in original).[7] The court does not sit as a "member[ ] of an employer's promotion board or committee." *Ezold*, 983 F.2d at 528. We do not judge whether the employer's decision was prudent, fair, or rational; rather, the issue is whether the Plaintiff has produced evidence indicating that the employer's proffered reason for its action was fabricated. She has not.

Martin testified that another reason he was dissatisfied with the Plaintiff, and therefore did not recommend her for promotion, was because she settled a case, without consulting outside counsel, for what outside counsel termed "too much money". [L. Martin Dep. at 27]. Plaintiff contends that this reason is pretextual because the case at issue was never assigned to the Commission's outside counsel and was settled "reasonably". Again, even if these allegations are true, they do not impeach Martin's testimony. Plaintiff has not produced any evidence that the Commission's outside counsel did not notify Martin that he believed the amount was too high, or that Martin did not rely upon that statement. Further, the issue of whether the case was actually settled for a reasonable amount is irrelevant. *See Hoeppner*, 31 F.3d at 17.

The third example offered by Mr. Martin was that Plaintiff's conduct, at times, rose to the level of insubordination. Specifically, he described an incident where the Plaintiff issued a memorandum in his name ordering that the Pennsylvania State Police not be included in a certain matter, after he had specifically directed her to include them. This event led Martin to issue a written reprimand to Plaintiff, which was placed in her personnel file. Plaintiff counters that Martin "totally disregarded her 2½ page refutation of [Martin's] charges." However, as with her other arguments, whether Plaintiff believed she deserved the reprimand is wholly irrelevant to this action. *See Hoeppner*, 31 F.3d at 17. The issue is the state of mind of the Commission, i.e., was Plaintiff denied the promotion because of her gender. The fact that she believed the reprimand was unfairly placed in her file bears no relevance to whether the Commission's stated reliance on the reprimand was pretextual.

 Plaintiff also offers circumstantial evidence which she believes affects the reliability of the Commission's proffered reasons for not promoting her. First, in regard to Martin's reprimand she contends that it may have been written in retaliation, because she would not sign what she considered to be an

---

7. Plaintiff offers no response to Mr. Snyder's complaint to Martin about working with Plaintiff.

undeserved letter recommending a pay raise for another employee. However, Plaintiff's statement that she "suspected" the reprimand was for this reason is insufficient to cast doubt upon Martin's statements. Even if these allegations are true, nothing suggests that the reprimand had anything to do with Plaintiff's gender, or that the Commission's purported reliance on it was false. Next, she contends that Martin did not give her the same salary as her predecessor when she was hired in 1978 and that she believed she received her six month raise, which was the Commission's policy, late. In addition to these events occurring over fourteen years before the incident in question, there is no evidence that they are traceable to her gender even if Plaintiff's beliefs are accurate.[8] Additionally, Plaintiff asserts that she was called a "token female" at the time of her hiring by a former Turnpike Commissioner. This statement offers no support for her claim. It was made by a former official who was not employed by the Commission when the decision not to promote Plaintiff was made. *See Ezold,* 983 F.2d at 545 ("Stray remarks by non-decisionmakers ... are rarely given great weight, particularly if they were made temporally remote from the date of decision").

■ Finally, she argues that "there were other expressions and remarks and references to sports and 'Old Boy' analogies recited ... concerning Martin which could justify a jury in finding that he had a sex bias." [Pl.'s Br. in Opp'n to S.J. at 11]. The first comment that she refers to is an alleged statement to a secretary by Mr. Martin that he was "disappointed" and "hurt" that Plaintiff had not told him early on that she was pregnant. This statement in no way indicates sexual bias toward the Plaintiff. Next, Verney contends that Martin constantly made sports references to her or in her presence: "you need to be a team player", "you're up to bat now", "we're on the 50 yard line we got to drive toward the goal". She makes the implausible argument that these references indicate a general bias by Martin toward women. Finally, Plaintiff alleges that Martin made continual references to a woman's breasts. While these statements, if true, reflect poor judgment, they do not constitute evidence that the Commission's reasons for not promoting the Plaintiff were pretextual.

b. Was discrimination "more likely than not" the reason for the denial of promotion?

Plaintiff also contends that there was a "pervasive, invidious discriminatory employment practice resulting in discrimination against females at the Commission that was more likely than not the motivating or determinative cause of the Commission's action." [Pl.'s Br. in Opp'n to S.J. at 11]. In support, she identifies numerous examples of what she believes to be evidence that the decision not to promote her was more likely than not based upon her gender.

She contends that at an Executive Session during which the promotion was discussed, James Dodaro referred to a disciplinary letter in Plaintiff's file that had been expunged, a fact known to Martin and Joseph Di Rienzo who were present and remained silent. There is nothing to indicate that these actions, if true, were taken because of Plaintiff's gender. Similarly, Plaintiff refers to the incident involving the Commission's outside counsel, Mr. Kamin, without giving any explanation of how that shows sexual discrimination. Further evidence, she contends, is that Howard Yerusalim "ignored her requests for due process rights to say something to correct negative things if they were being said about her." [Pl's.Br. in Opp'n to S.J. at 13]. Again, this bears no relevance to whether the decision to promote was based on gender. Next, she asserts that the Commission failed to enforce its affirmative action plan, that the policy of posting vacancies did not begin until May, 1992, and that the policy only notifies persons who are already employed at the Commission, most of whom are

---

8. Plaintiff presented no evidence that her predecessor's starting salary was higher than hers. She testified that "I asked [her predecessor] what the job paid, and [he] informed me that it was 18–something, that that's what he was making" at that time. [J. Verney Dep. at 79, 80]. Nowhere does she indicate what her predecessor's starting salary was, or how long he had worked at the Commission at the time he was earning eighteen thousand per year.

men. These facts do not in any way indicate a general bias toward women or that Plaintiff was not promoted because of gender. Even if the policies are unfair or inadequate, they have no bearing on Plaintiff's claim that the Commission intentionally discriminated against her because of her gender. Finally, she argues that in 1989 she had enough votes to be named Chief Counsel but the appointment was blocked, that one employee of the Commission stated that "you might as well write the complaint for her" after she was denied the promotion in 1992, and that another employee stated that Plaintiff need not even be given the opportunity to apply for the position of Deputy Chief Counsel. As with her previous claims, this "evidence" lends no support to her claim that the Commission failed to promote her because she is a woman.

Since Plaintiff has failed to produce sufficient evidence to allow a reasonable jury to find that the Commission's proffered reasons for its decision not to promote her were pretextual, and inasmuch as she has failed to introduce evidence that the likely reason for the denial of a promotion was based on gender, summary judgment must be rendered in favor of the Commission.

### C. Section 1983 Claim (1:CV–93–1229)

Plaintiff's claim under 42 U.S.C. § 1983 is against various employees and officials of the Commission.[9] She contends that she was denied her right to equal protection under the Fourteenth Amendment because the Defendant employees discriminated against her by denying her the promotion to Deputy Chief Counsel, based on her gender.[10]

### 1. Qualified Immunity

■ The Defendant employees contend that they are entitled to qualified immunity for their actions taken with regard to the Plaintiff. The test for qualified immunity

was set forth by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where it held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410. Thus, the courts must engage in a two-part analysis: whether Plaintiff had a clearly established constitutional right and whether that right was violated. *Giuffre v. Bissell,* 31 F.3d 1241, 1255 (3d Cir.1994). It is clear that the Defendants were engaging in discretionary activities and Plaintiff undoubtedly has a constitutional right not to be discriminated against because of her sex. Thus, we need only consider whether the individual Defendants violated that right.

■ Normally, the issue of qualified immunity is limited to whether the Defendant official knew or should have known that his or her conduct violated the Plaintiff's constitutional rights. However, in cases where intent is an element of the Plaintiff's claim (such as a sexual discrimination claim under section 1983), she must produce evidence of the official's subjective intent to violate her constitutional rights to avoid summary judgment on qualified immunity grounds. *Poe v. Haydon,* 853 F.2d 418, 431 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); *see also Gutierrez v. Municipal Court of Southeast Judicial District,* 838 F.2d 1031, 1051 (9th Cir.1988), *vacated on other grounds,* 490 U.S. 1016, 109 S.Ct. 1736, 104 L.Ed.2d 174 (1989); *Wright v. South Arkansas Regional Health Center, Inc.,* 800 F.2d 199, 203 (8th Cir.1986); *Simmerman v. Corino,* 804 F.Supp. 644, 652 (D.N.J.1992), *aff'd* 16 F.3d 405 (3d Cir.1993). To avoid dismissal on qualified immunity grounds, the Plaintiff in a

---

9. The Defendant employees argue that Plaintiff responded in an untimely manner to their motion for summary judgment and that her declaration was inadequate. However, Plaintiff's response was filed within the time limitations set forth in the Local Rules and Plaintiff has resubmitted her declaration using the appropriate language. Thus, these arguments are moot.

10. Although Plaintiff contends that she was not considered for the promotion, as set forth above, we find that no reasonable jury could so conclude.

sexual discrimination claim must produce some evidence that a Defendant intentionally discriminated against her based on gender. *Poe*, 853 F.2d at 431. While we agree with Defendants that the Plaintiff must produce evidence of intent to avoid dismissal, we disagree with the type of evidence required. Defendants contend that in order to avoid dismissal, the Plaintiff must present direct, as opposed to circumstantial, evidence of·an intent to discriminate because of gender.

Some courts have concluded that plaintiffs must introduce direct evidence of improper motive or intent to avoid summary judgment on the basis of qualified immunity in cases where subjective intent is an element of the plaintiff's claim. *See, e.g., Kimberlin v. Quinlan*, 6 F.3d 789, 795 (D.C.Cir.1993), *cert. granted*, —— U.S. ——, 115 S.Ct. 929, 130 L.Ed.2d 876 (1994) (No. 93–2068); *Poe*, 853 F.2d at 431.[11] However, many other courts have held to the contrary. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 235, 111 S.Ct. 1789, 1795, 114 L.Ed.2d 277, 289 (1991) (Kennedy, J., concurring)[12]; *Tompkins v. Vickers*, 26 F.3d 603, 608 (5th Cir.1994); *Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *Elliott v. Thomas*, 937 F.2d 338, 345 (7th Cir.1991), *cert. denied*, 502 U.S. 1121, 112 S.Ct. 1242, 117 L.Ed.2d 475 (1992); *Blue v. Koren*, 865 F.Supp. 169, 174 (S.D.N.Y.1994). Although the Third Circuit has not considered this issue, we believe that direct evidence is not required to withstand summary judgment. "[D]irect evidence of improper motive is usually difficult, if not impossible, to obtain. Thus requiring direct evidence would effectively insulate from suit public officials who deny an improper motive in cases such as this." *Tompkins*, 26 F.3d at 609. Plaintiff can carry her burden at trial

by presenting circumstantial and inferential evidence of the Defendants' intent to discriminate. *See Crutcher*, 883 F.2d at 504. If we were to require Plaintiff to present direct evidence of discrimination to avoid summary judgment on qualified immunity grounds, we would be forcing her to produce more evidence than that which would be required for success at trial on the merits. *Id.* We decline to adopt a rule with such an illogical result.

■ In the present action, the Plaintiff can defeat the motion for summary judgment by introducing evidence, either circumstantial or direct, of an individual Defendant's subjective intent to act against her on the basis of gender. A motion for dismissal based on qualified immunity may be raised at any time. In this case, however, discovery is completed and the Defendants have raised the defense on the law and the merits. Thus, a determination on the merits reflects a decision on qualified immunity.

**2. Requirements of Section 1983 Claim**

■ In order for the Plaintiff to be successful on a section 1983 claim, she must prove that the Defendants were acting under color of state law and that they deprived her of a constitutional right. There is no dispute over the first element and the only issue is whether the Defendants discriminated against the Plaintiff on the basis of her gender.

■ In *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990), the court set forth the plaintiff's burden in section 1983 claims for sexual discrimination:

To bring a successful claim under 42 U.S.C. § 1983 for denial of equal protection, plaintiffs must prove the existence of

**11.** However, the court limited the rule of *Poe* in *Crutcher v. Kentucky*, 883 F.2d 502 (6th Cir. 1989), where it held that although the literal language of *Poe* indicates that "direct" evidence must be introduced to defeat summary judgment, the rule does not require any greater degree of proof than would be required in a decision on the merits. *Id.* at 504. In other words, since a sexual discrimination case can be proved using circumstantial evidence at trial, no more is needed to avoid dismissal on qualified immunity grounds. *Id.*

**12.** In *Siegert*, the Supreme Court never reached the issue of whether direct evidence of intent was required to avoid summary judgment in qualified immunity cases. It held that the claim failed to allege a violation of a clearly established constitutional right. However, Justice Kennedy, in his concurrence, and Justices Marshall, Blackmun, and Stevens, in their dissent, addressed and rejected the requirement of direct, as opposed to circumstantial, evidence. *Id.* at 246, 111 S.Ct. at 1800–01, 114 L.Ed.2d at 296 (Marshall, Blackmun, and Stevens, JJ., dissenting in part).

purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986). They must demonstrate that they "receiv[ed] different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg–Salem School Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir.1980). Specifically, to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon her gender. *Bohen v. City of East Chicago*, 799 F.2d 1180, 1186–87 (7th Cir. 1986).

*Id.* at 1478 (alteration in original). Thus, the Plaintiff must present some evidence that an individual Defendant discriminated against her because she is a woman.

■ As to Defendant Martin, we have already considered Plaintiff's evidence against him (with regard to her claim against the Commission), and found that it lacked merit. Her evidence against Longenbach is that:

He participates in the employment practice. He is the attorney assigned to the personnel committee. If they have questions, they are to call him. And, in fact, if you look in my diary, I've been told by my secretary, who was told by Kevin's secretary, that Kevin prepared the reorganization plan [to reactivate the position of Deputy Chief Counsel] that initially when presented to Mr. Martin, he indicated that it was not fair. . . . That's my whole contention, that he was given that job in violation of my Title VII rights, my 1983 rights, my procedural due process rights.

[J. Verney Dep. at 93, 122]. There is nothing in this statement that indicates that Defendant Longenbach in any way discriminated against the Plaintiff based on gender.

According to Plaintiff, Defendant Lawson discriminated against her because "[h]e participated in an unlawful employment practice that had an adverse disparate impact on females, that was so grossly out of whack that it became an intentional disparate treatment of me."[13] [J. Verney Dep. at 77]. She advances the same argument with respect to

Defendants Ursomarso, Brady, Malone, Wilson, and Shelton. [J. Verney Dep. at 56–57, 67–68, 76–77]. These conclusory allegations contain nothing that could lead a jury to conclude that these Defendants discriminated against the Plaintiff because of her sex. Plaintiff's evidence as to Defendant Yerusalim is limited to participation in the political patronage system and "failing to provide [Plaintiff] with procedural due process." [J. Verney Dep. at 56]. The argument that Plaintiff advances, that a purported violation of due process is evidence of gender discrimination, borders on the absurd.

Plaintiff contends that Defendant Palermo "sits on the personnel committee[,] . . . had an obligation to verify the information that was provided to him", participated in the political patronage system, and said she was not a "team player". [J. Verney Dep. at 66–67, 88.] These contentions are frivolous. Defendant Carnabucci allegedly discriminated against Plaintiff by participating in the political patronage system, and in voting to promote Longenbach relied on hearsay that Plaintiff planned to accept another job. [J. Verney Dep. at 74]. These allegations provide no evidence of discrimination on the basis of gender. Plaintiff also testified that Defendant Di Rienzo's conduct which amounted to discrimination was his participation in the political patronage system and his alleged sexual statements to other females. [J. Verney Dep. at 69]. While the latter might be relevant to a harassment claim by the recipient, such remarks provide no proof that Di Rienzo acted against Plaintiff because of gender.

As to Defendant Dodaro, Plaintiff contends that he violated her equal protection rights by mentioning the letter of reprimand that had already been removed from her file and by participating in the political patronage system. [J. Verney Dep. at 29, 33]. Finally, she asserts that Defendant Sokol relied on Defendant Martin's recommendation to promote Longenbach, participated in the political patronage system, and failed to enforce the Commission's affirmative action plan. [J.

---

**13.** The "unlawful employment practice" that Plaintiff refers to is the political patronage system.

Verney Dep. at 66]. Plaintiff's evidence does not, in any sense, tend to show that these Defendants discriminated against her because of gender.

Because Plaintiff has failed to produce evidence that any of the individual Defendants discriminated against her because of gender, we must grant summary judgment in their favor.